FRANKENMUTH MUTUAL INSURANCE COMPANY v MASTERS

Docket Nos. 110452, 110881. Argued March 9, 1999 (Calendar No. 9). Decided June 15, 1999.

Frankenmuth Mutual Insurance Company brought an action in the Alpena Circuit Court against George Edwin Masters and George Enger Masters, its insureds, seeking a declaration that certain commercial and homeowners policies did not require Frankenmuth to defend and indemnify the Masters for damages resulting from a fire they confessed to setting. Frankenmuth argued that neither policy provided coverage because the policies define "occurrence" as an "accident" and an intentionally set fire cannot be construed as an accident. It argued further that, even if the fire and resulting damage could be construed as an occurrence, the policies' intentional-acts exclusion clauses negated coverage. The court, Joseph P. Swallow, J., granted Frankenmuth summary disposition. The Court of Appeals, SAAD, P.J., and NEFF and JANSEN, JJ., affirmed in part and reversed in part, finding that under the commercial policy there was a question of fact about whether the Masters intended or expected to damage property other than their own. 225 Mich App 51 (1997) (Docket No. 193649). Frankenmuth and certain subrogee insurers appeal.

In a unanimous opinion by Justice KELLY, the Supreme Court held:

Because the collateral damage was not "accidental" as defined in the insurance policies, no "occurrence" triggered Frankenmuth's liability under the policies.

1. According to the plain meaning of both policies, coverage exists only where an "occurrence" has taken place. "Occurrence" is defined in the policies as an accident. The term "accident" is not defined in the policies; however, using the common meaning of the term, case law has defined accident as an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.

2. The appropriate focus of the term "accident" must be on both the injury-causing act or event and its relation to the resulting property damage or personal injury. An insured need not act unin-

tentionally in order for the act to constitute an accident and therefore an occurrence. However, where an insured acts intentionally, a problem arises in attempting to distinguish between intentional acts that can be classified as accidents and those that cannot. In such cases, a determination must be made whether the consequences of the insured's intentional act either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions. When an insured acts intending to cause property damage or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended. Similarly, when an insured's intentional actions create a direct risk of harm, there can be no liability coverage for any resulting damage or injury, despite the lack of an actual intent to damage or injure.

3. In this case, viewed from the standpoint of the Masters, the fire, which was the underlying event, was caused by the Masters' intentional act. There is no question that, in perpetrating the intentional act, the Masters intended to do property damage. Thus, the Masters' act cannot be characterized as an "accident," and there was no "occurrence" for purposes of coverage under either policy. It is irrelevant whether the harm that resulted was different from or exceeded the harm intended.

Reversed.

*Braun, Kendrick, Finkbeiner, P.L.C.* (by *Scott C. Strattard* and *Jeffrey C. Wilson*), for plaintiff-appellee Frankenmuth Mutual Insurance Company.

*Freel & Freel, P.C.* (by *Timothy R. Freel* and *Renee E. Nesbit*), for defendants-appellees Lake States Insurance Company.

*Klemanski & Honeyman, P.C.* (by *James C. Klemanski* and *Edward J. Everhart*), for defendants counter-plaintiffs-appellees Meridian Mutual Insurance Company and State Mutual Insurance Company.

Kelly, J. This is an action for declaratory judgment. Frankenmuth Mutual Insurance Company seeks a determination of its obligation to indemnify its insureds for collateral property damage resulting

from the insureds' intentional destruction of their inventory by fire.

We hold that the collateral damage was not "accidental" as defined in the insurance policies at issue. Consequently, no "occurrence" triggered Frankenmuth's liability under the policies. Therefore, we reverse the decision of the Court of Appeals and reinstate the trial court's grant of summary disposition in favor of Frankenmuth.

I

This case arises out of a fire that began on the premises of the Masters & Son Men's Clothing Store in Alpena, Michigan. George Edwin Masters (George Sr.) and his son, George Enger Masters (George Jr.), intentionally set the fire.[1] The fire occurred at the Masters & Son Men's Clothing Store during the early morning hours of August 17, 1993. Both confessed to police that their plan had been to start a small smokey fire that would damage their clothing inventory and allow them to collect casualty insurance. They denied intending to destroy their building or any of the neighboring buildings.

The resulting fire extensively damaged the clothing store and spread to nearby businesses, causing collateral damage from both the fire and the efforts to extinguish it.

---

[1] The Masters now deny intentionally setting the fire. However, both George Sr. and George Jr. have been convicted of arson for burning the store. MCL 750.73; MSA 28.268. For purposes of this case, therefore, it is a settled question. The Masters were acquitted of another charge of arson in relation to the burning of several adjacent buildings. However, the acquittal does not directly answer the question whether the damage to those buildings should be considered an "occurrence," requiring indemnification.

The clothing store was owned by George Sr. It was insured by a casualty and comprehensive general liability policy written by Frankenmuth Mutual (commercial policy). George Sr. and his wife also owned a home, insured under a homeowners policy also written by Frankenmuth.[2]

Certain of the other businesses damaged by the fire had full casualty insurance coverage, while others were only partially covered. They, along with their insurers, sought to impose liability against the Masters. The Masters in turn asked Frankenmuth to defend and indemnify pursuant to the commercial and homeowners policies. Frankenmuth then filed the instant declaratory judgment action, seeking a determination whether there was coverage for the property damage.

Frankenmuth sought summary disposition, arguing two theories. First, it asserted that neither policy provided coverage because the policies define "occurrence" as an "accident" and this intentionally set fire cannot be construed as an accident. Second, even if the fire and resulting damage could be construed as an occurrence, the policies' intentional-acts exclusion clauses negate coverage.[3]

The trial court granted summary disposition in favor of Frankenmuth, pursuant to MCR 2.116(C)(10). It held that, to find whether there had been an "occur-

---

[2] Although Frankenmuth originally contested that the Masters were "insured" under the commercial policy, it has not continued to dispute this issue. Consequently, for the purposes of our opinion, both George Jr. and George Sr. are insureds under both policies.

[3] Both policies contain intentional-acts exclusions. They are notably different in scope. However, we hold that the fire and resulting damage did not constitute an "occurrence" under either policy. Therefore, we do not reach whether the intentional-acts exclusions would bar coverage.

rence," it must examine the events from the standpoint of the insureds and subjectively evaluate their intent. It reasoned that our recent decisions in *Arco Industries Corp v American Motorists Ins Co*[4] and *Frankenmuth Mut Ins Co v Piccard*[5] provided guidance in this area. The trial court concluded that *Arco* and *Piccard* were distinguishable from the instant case, stating:

> Turning to the case at bar, it is necessary for this Court to ascertain whether or not the Masterses [sic] had the subjective intent for the "occurrence" in question. It is undisputed that setting the initial fire was not an accident, i.e., no occurrence under the policy. It is clear that the Masterses intended to burn property; the crime they were convicted of required a finding by the jury of the specific intent to burn property, a subjective standard.
>
> The Masterses had the specific intent to burn property—the questions of whose or how much are wholly irrelevant. What is relevant is that the character of the resulting harm is consistent with the harm intended by the Masterses. To the contrary, in *Piccard* and *Arco*, the character of the resulting harm was inconsistent with that intended by the insured.

The trial court also went on to discuss the alternative argument, concluding that both policies' intentional-acts exclusions would also bar recovery here.

The subrogee insurance companies appealed to the Court of Appeals, which partially reversed the trial court's holding in a published decision. 225 Mich App 51; 570 NW2d 134 (1997). It found *Arco* controlling:

> [W]e must analyze whether the Masters' conduct, from their perspective, evidenced an intent to burn the two

---

[4] 448 Mich 395; 531 NW2d 168 (1995).
[5] 440 Mich 539; 489 NW2d 422 (1992).

adjoining buildings. Second, we must analyze whether the
Masters had an awareness that harm was likely to follow
from the performance of their actions. Further, the [*Arco*]
Court stated: "Mere knowledge of potential danger does not
equal knowledge of actual, intentional, expected harm."

In the present case, the trial court found that the Masters
had the specific intent to burn property and that the ques-
tions of whose property and how much property they
intended to burn were "wholly irrelevant." The trial court
also stated that the character of the resulting harm was
consistent with the harm intended by the Masters. We
believe that the trial court erred in ruling that the Masters,
as a matter of law, intended to burn the adjoining buildings
and that the question of whose property they intended to
burn was irrelevant. The Supreme Court's decision in *Arco*
certainly instructs to the contrary. In *Arco*, although there
were intentional discharges of volatile organic compounds
into the environment by the insured, there was no evidence
presented establishing that the intentional discharges were
intended or expected to harm the environment. Thus, there
was an occurrence within the meaning of the policy such
that the insurer had a duty to defend.

The case before us presents a similar situation. Although
the Masters intended to start a fire in their store, there is
evidence that they did not intend or expect to burn the
adjoining buildings. Therefore, the trial court erred in decid-
ing this case under a motion for summary disposition.
There is a question of fact regarding whether the Masters
intended or expected to burn the adjoining buildings. This
issue should not have been decided as a matter of law. [225
Mich App 59-60 (citations omitted).]

The Court of Appeals then went on to examine the
intentional-acts exclusion provisions. It concluded
that, since the homeowners policy's exclusion used
objective language, there was no coverage under this
policy. However, because the commercial policy's
exclusion used subjective language, there is a ques-
tion of fact about whether the Masters intended or

expected to damage property other than their own store.

Both Frankenmuth and the subrogee insurers sought leave to appeal in two separate applications. This Court granted leave in both on October 12, 1998. 459 Mich 880.

II

In determining whether Frankenmuth must indemnify the Masters, we examine the language of the insurance policies and interpret their terms in accordance with well established Michigan principles of construction. *Arco, supra* at 402; *Michigan Millers Mut Ins Co v Bronson Plating Co,* 445 Mich 558, 567; 519 NW2d 864 (1994).

An insurance policy must be enforced in accordance with its terms. *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197, 207; 476 NW2d 392 (1991). We will not hold an insurance company liable for a risk it did not assume. *Arco, supra; Auto-Owners Ins Co v Churchman,* 440 Mich 560, 567; 489 NW2d 431 (1992).

In interpreting ambiguous terms of an insurance policy, this Court will construe the policy in favor of the insured. *Auto Club Ins Ass'n v DeLaGarza,* 433 Mich 208, 214; 444 NW2d 803 (1989); *Powers v DAIIE,* 427 Mich 602, 624; 398 NW2d 411 (1986). However, we will not create ambiguity where the terms of the contract are clear. *Churchman, supra* at 567; *Patek v Aetna Life Ins Co,* 362 Mich 292; 106 NW2d 828 (1961). Where there is no ambiguity, we will enforce the terms of the contract as written. *Arco, supra* at 402; *Stine v Continental Casualty Co,* 419 Mich 89, 114; 349 NW2d 127 (1984).

Furthermore, this Court will interpret the terms of an insurance contract in accordance with their "commonly used meaning." *Arco, supra* at 403; *Group Ins Co of Michigan v Czopek,* 440 Mich 590, 596; 489 NW2d 444 (1992); *Fireman's Fund Ins Cos v Ex-Cell-O Corp,* 702 F Supp 1317, 1323, n 7 (ED Mich, 1988). We take into account the reasonable expectations of the parties. *Vanguard Ins Co v Clarke,* 438 Mich 463, 472; 475 NW2d 48 (1991).

According to the plain meaning of both the Frankenmuth homeowners and commercial policies, coverage exists only where an "occurrence" has taken place. The relevant portion of the homeowners policy provides:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, [Frankenmuth] will:
>
> 1. pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgment interest awarded against the insured; and
>
> 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

The term "occurrence" is defined in the homeowners policy as

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>
> a. bodily injury; or
>
> b. property damage.

The relevant portion of the commercial policy provides:

> a. [Frankenmuth] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> *    *    *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

The term "occurrence" is defined in the commercial policy as

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The question we must answer, then, is whether the case before us involved an "accident" as defined under the policies.

III

In recent times, there has been controversy over interpreting the term "accident" in cases such as the instant case, particularly where it is not defined in the insurance policy. See, e.g., *Auto Club Group Ins Co v Marzonie*, 447 Mich 624; 527 NW2d 760 (1994). When the meaning of a term is not obvious from the policy

language, the "commonly used meaning" controls.
*Arco, supra* at 404; *Czopek, supra* at 596.

In the instant case, the term "accident" is not
defined by the Frankenmuth policies. However, using
the common meaning of the term, we have repeatedly
stated that "an accident is an undesigned contin-
gency, a casualty, a happening by chance, something
out of the usual course of things, unusual, fortuitous,
not anticipated, and not naturally to be expected."
*Arco, supra* at 404-405; *Metropolitan Property & Lia-
bility Ins Co v DiCicco*, 432 Mich 656, 670; 443 NW2d
734 (1989);   *Marzonie, supra* at 631. After some
debate concerning the issue, we have also held that
the definition of accident should be framed from the
standpoint of the insured, not the injured party.[6] Thus,
in the instant case, we hold that the accident must be

---

[6] As noted by Justice MALLETT in *Arco, supra* at 405:

This Court has debated this issue in a number of previous cases.
See *Frankenmuth Mutual Ins Co v Piccard*, 440 Mich 539; 489
NW2d 422 (1992),[3]   *Czopek*,[4] and *Marzonie, supra*. In *Marzonie*,
this Court finally formed a majority on this issue holding that "acci-
dents" are evaluated from the standpoint of the insured, not the
injured person. See opinions of Justices LEVIN, BRICKLEY, and
GRIFFIN, and Chief Justice CAVANAGH.

---

[3] In *Piccard*, Justice RILEY, joined by Justices BRICKLEY and
MALLETT, held that an "accident" should be analyzed from the stand-
point of the injured party. Although Justice LEVIN concurred only in
the result, he has recently opined that "accidents" should be
viewed from the standpoint of the insured. See *Marzonie, supra* at
651-652 (LEVIN, J., dissenting).
 [4] Although the issue of "accidents" did not arise in *Czopek* as it
does here, Justice BOYLE stated that where the policy language does
not specify the perspective to be applied when determining if there
was an accident, the accident must be viewed from the perspective
of the injured party. *Czopek, supra* at 608-612.

evaluated from the standpoint of the Masters, not those harmed by their actions.

We also hold that the appropriate focus of the term "accident" must be on both "the injury-causing *act* or *event* and its relation to the resulting property damage or personal injury." *Marzonie, supra* at 648 (GRIFFIN, J., with CAVANAGH, C.J., and BRICKLEY, J., concurring); see also *Piccard, supra* at 556-557 (CAVANAGH, C.J., with BOYLE and GRIFFIN, JJ., concurring). In so doing, we specifically adopt the persuasive analyses contained in Justice GRIFFIN's plurality opinion in *Marzonie* and Chief Justice CAVANAGH's dissent in *Piccard*.[7]

Of course, "an insured need not act unintentionally" in order for the act to constitute an "accident" and therefore an "occurrence." *Marzonie, supra* (GRIFFIN, J., with CAVANAGH, C.J., and BRICKLEY, J., concurring); see also *Piccard, supra* (CAVANAGH, C.J., with BOYLE and GRIFFIN, JJ., concurring).

However, where an insured does act intentionally, a problem arises "in attempting to distinguish between intentional acts that can be classified as 'accidents' and those that cannot." *Marzonie, supra* (GRIFFIN, J., with CAVANAGH, C.J., and BRICKLEY, J., concurring). In such cases, a determination must be made whether the consequences of the insured's intentional act

> either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions. When an insured acts intending to cause property damage or per-

---

[7] These plurality opinions are not binding precedent because they did not garner a majority of the Court. See *Dean v Chrysler Corp*, 434 Mich 655, 661, n 7; 455 NW2d 699 (1990).

sonal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended. Similarly, . . . when an insured's intentional actions create a direct risk of harm, there can be no liability coverage for *any* resulting damage or injury, despite the lack of an actual intent to damage or injure. [*Marzonie, supra* at 648-649 (GRIFFIN, J., with CAVANAGH, C.J., and BRICKLEY, J., concurring).]

We find useful the hypothetical example posed by Chief Justice CAVANAGH in *Piccard, supra* at 558:

Suppose the fire had been started by a faulty electric cord on the insured's coffeemaker. Examining the insured's act for "intent," there is no doubt that he purposely plugged in the coffeemaker and turned on the switch. In that sense he acted intentionally. The fire remains an accident and the act constitutes an occurrence, however, because at the time of the insured's purposeful act he had no intent to cause harm. The act of plugging in the coffeepot is not a sufficiently direct cause of the harm, and the fire in this example is an accident.

Applying these principles to the case before us, viewed from the standpoint of the Masters, the fire, which was the underlying event, was caused by the Masters' intentional act. Also, there is no question that, in perpetrating the intentional act, the Masters intended to do property damage. Thus, the Masters' act cannot be characterized as an "accident," and there was no "occurrence" for purposes of coverage under either policy. It is irrelevant whether the harm that resulted, damage to the clothing store and surrounding businesses, was different from or exceeded the harm intended, minor damage to the clothing

inventory. *Id.* at 557 (CAVANAGH, C.J., with BOYLE and GRIFFIN, JJ., concurring).[8]

In light of our conclusion, we need not determine whether the policies' intentional-acts exclusions would preclude recovery.

Because the policies at issue do not provide coverage in this case, we reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition in favor of Frankenmuth.

WEAVER, C.J., and BRICKLEY, CAVANAGH, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with KELLY, J.

---

[8] To the extent that our previous decisions in *Piccard, Arco,* and *Marzonie, supra,* conflict with our opinion in the instant case, we repudiate the rationales of those cases.