NABOZNY v BURKHARDT

Docket No. 113876. Decided March 7, 2000. On application by the gar-
nishee defendant for leave to appeal, the Supreme Court, in lieu of
granting leave, reversed the judgments of the trial court and the
Court of Appeals and remanded the case to the trial court for entry
of judgment for the garnishee defendant.

John Nabozny brought an action in the St. Clair Circuit Court against
Kevin Burkhardt, seeking damages for injuries suffered in a fight
with the defendant. The defendant's insurer, Pioneer State Mutual
Insurance Company, refused to defend or indemnify, reasoning that
the injury was not the result of an accident and thus was not a cov-
ered occurrence within the terms of its policy. The defendant then
defaulted, and the plaintiff obtained a default judgment against
him. Thereafter, the plaintiff attempted to garnish the funds of Pio-
neer. The court, Daniel J. Kelly, J., denied Pioneer's motion for
summary disposition. Following a jury trial, the court entered judg-
ment for the plaintiff. The Court of Appeals, DOCTOROFF, P.J., and
SAWYER and FITZGERALD, JJ., affirmed in an opinion per curiam. 233
Mich App 206 (1998) (Docket No. 203738). Pioneer seeks leave to
appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

The definition of "accident" should be framed from the stand-
point of the insured, not the injured party. The appropriate focus of
the term "accident" must be on both the injury-causing act or event
and its relation to the resulting property damage or personal injury.
The test is whether the consequences of an insured's intentional act
either were intended by the insured or reasonably should have
been expected because of the direct risk of harm intentionally cre-
ated by the insured's actions. When an insured acts intending to
cause property damage or personal injury, liability coverage should
be denied, irrespective of whether the resulting injury is different
from the injury intended. A determination must be made whether
the consequences of the insured's intentional act either were
intended by the insured or reasonably should have been expected
because of the direct risk of harm intentionally created by the
insured's actions. In this case, Mr. Burkhardt apparently did not
intend to break Mr. Nabozny's ankle. However, it is plain that in
tripping someone to the ground in the course of a fight the defend-

ant reasonably should have expected the consequences of his acts because of the direct risk of harm created. This precludes a finding of liability coverage under the terms of the policy. The injury did not result from an accident. Because it reasonably should have been expected, it is irrelevant that the broken ankle was not the specific harm intended by the insured.

Reversed and remanded.

*Edson & Hastings* (by *Gerald Edson*) for plaintiff-appellee.

*Richard F. Huegli* for garnishee-defendant-appellant.

Amicus Curiae:

*Constantine N. Kallas* for Insurance Information Association of Michigan.

PER CURIAM. The plaintiff was injured in a fight with defendant Kevin Burkhardt. Plaintiff broke his ankle when his opponent tripped him. The plaintiff sued, but Pioneer State Mutual Insurance Company, the defendant's insurer, refused to defend or indemnify, reasoning that the injury was not the result of an "accident" and thus was not a covered "occurrence" within the terms of its policy. The plaintiff obtained a default judgment against the defendant, and sought to garnish the funds of Pioneer. The circuit court granted judgment for the plaintiff and the Court of Appeals affirmed. We reverse the judgments of the circuit court and the Court of Appeals.

I

On the evening of April 8, 1994, plaintiff John R. Nabozny and several friends from Yale High School were at "Brown's Pit," a gravel pit on Brown Road in

Clyde Township of St. Clair County. Also present were defendant Kevin M. Burkhardt and others from Marysville High School. Though underage, these young men were drinking.

There came a point when Mr. Burkhardt challenged Mr. Nabozny to a fight. Mr. Nabozny declined, but the offer was soon renewed. This time, Mr. Burkhardt grabbed Mr. Nabozny by the upper body while bringing his leg across the back of Mr. Nabozny's leg. Mr. Burkhardt later acknowledged that he tripped Mr. Nabozny "[t]o get him down to the ground so I could have the advantage."

In the process, Mr. Nabozny's ankle was broken, either when his leg was struck or when he landed on the ground. A physician later performed surgery to bring the ankle into alignment so that it could heal properly.

Mr. Nabozny sued Mr. Burkhardt in circuit court, seeking compensation for medical expenses and other harm.[1] Mr. Burkhardt notified Pioneer State Mutual Insurance Company, which provided homeowners insurance for the Burkhardt family. However, Pioneer refused to defend or indemnify him. The basis for the refusal was that the policy provided liability coverage for damages caused by bodily injury arising from, inter alia, an "occurrence," which the policy defined in this manner:

---

[1] Mr. Nabozny alleged that his "injury, namely broken bones in the left ankle" caused him to "suffer physical and mental pain and suffering, physical injury, the necessity of surgery, permanent disfiguring scarring, medical expenses, the likelihood of future degenerative arthritis in the ankle joint and restrictions on activity because of pain as well as other noneconomic damages."

"[O]ccurence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a. bodily injury; or

    b. property damage.

Pioneer said that the intentional tripping of Mr. Nabozny had not been an "accident."

With Pioneer declining to defend or indemnify, Mr. Burkhardt allowed himself to be defaulted. Mr. Nabozny then obtained a default judgment in the amount of $75,000.[2]

Pioneer entered the case when Mr. Nabozny attempted to garnish the judgment amount. Pioneer moved for summary disposition, but the motion was denied.[3]

Following a jury trial, the circuit court granted judgment on the jury's verdict in favor of Mr. Nabozny,[4] and later denied Pioneer's motion for judgment NOV or, alternatively, for a new trial.

Pioneer appealed, but the Court of Appeals affirmed. 233 Mich App 206; 591 NW2d 685 (1998).

Pioneer has now filed an application for leave to appeal in this Court.[5]

---

[2] The default judgment also granted Mr. Nabozny $199.40 in taxable costs.

[3] The circuit court later denied a renewed motion for summary disposition.

[4] A second amended judgment requires payment of $86,283.71 (which includes costs and judgment interest to that date), plus continuing judgment interest.

[5] The application is supported by the Insurance Information Association of Michigan, which has filed a motion for leave to appear as amicus curiae. The motion is granted.

II

As indicated, the policy issued by Pioneer to the Burkhardt family provides liability coverage for damages arising from an "occurrence," which in turn is defined as an "accident."

Upholding the judgment of the circuit court, the Court of Appeals analyzed the word "accident" in light of several decisions of this Court,[6] as well as the decision of the Court of Appeals in *Frankenmuth Mut Ins Co v Masters*, 225 Mich App 51; 570 NW2d 134 (1997). 233 Mich App 212-215. After discussing those opinions, the Court of Appeals concluded:

> Therefore, we conclude that while Burkhardt certainly engaged in intentional conduct when he initiated the fight with plaintiff, the evidence contradicts a finding that he intended to harm plaintiff, or even that harm to plaintiff was anticipated or naturally expected as a result of his conduct. Accordingly, the jury's finding that plaintiff's injuries resulted from an accident because they were neither anticipated nor naturally to be expected was not against the great weight of the evidence. [233 Mich App 215.]

We will not linger in a review of the approach taken in the earlier decisions of this Court, or by the Court of Appeals in *Masters*. Rather, we will turn directly to our unanimous decision in *Masters*, in which we reversed the judgment of the Court of

---

[6] *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395; 531 NW2d 168 (1995), *Auto Club Group Ins Co v Marzonie*, 447 Mich 624; 527 NW2d 760 (1994), *Group Ins Co of Michigan v Czopek*, 440 Mich 590; 489 NW2d 444 (1992), *Frankenmuth Mut Ins Co v Piccard*, 440 Mich 539; 489 NW2d 422 (1992), *Allstate Ins Co v Freeman*, 432 Mich 656; 443 NW2d 734 (1989).

Appeals and partially overruled three of our earlier decisions.[7]

In *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105; 595 NW2d 832 (1999), the owner of a clothing store and the owner's son intentionally started a fire in the store, intending only to damage the inventory and allow the owner to collect insurance proceeds. The fire was not so easily contained, however, and it caused extensive damage to adjoining businesses, which had varying degrees of insurance coverage.

The owners of the adjacent properties and their insurers sought to recover their losses from those who were responsible for the fire. This prompted Frankenmuth Mutual, which provided liability insurance to the owner of the clothing store, to file a separate suit, seeking a declaratory judgment that there was no coverage.

As in the present case, the policy in *Masters* provided coverage for liability arising from an "occurrence." And, again, an "occurrence" was defined, in part, as an "accident."

In *Masters*, we first stated the basic principles governing the interpretation of an insurance contract.[8]

---

[7] In *Masters*, we concluded our discussion of the present issue with this:

> To the extent that our previous decisions in *Piccard*, *Arco*, and *Marzonie*, *supra*, conflict with our opinion in the instant case, we repudiate the rationales of those cases. [460 Mich 105, 117, n 8; 595 NW2d 832 (1999).]

[8] In determining whether Frankenmuth must indemnify the Masters, we examine the language of the insurance policies and interpret their terms in accordance with well-established Michigan principles of construction. *Arco*, [n 7] *supra* at 402; *Michigan Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558, 567; 519 NW2d 864 (1994).

We next reiterated prior holdings that "an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." 460 Mich 114. Further, we held that "the definition of accident should be framed from the standpoint of the insured, not the injured party," and that "the appropriate focus of the term 'accident' must be on both 'the injury-causing *act* or *event* and its relation to the resulting property damage or personal injury'" (emphasis in the original). 460 Mich 114-115.

We then turned to the difficulty that arises when an intentional act causes unintended consequences. Quoting from Justice GRIFFIN's opinion in *Auto Club Group Ins Co v Marzonie*, 447 Mich 624, 648-649; 527

---

An insurance policy must be enforced in accordance with its terms. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). We will not hold an insurance company liable for a risk it did not assume. *Arco, supra; Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).

In interpreting ambiguous terms of an insurance policy, this Court will construe the policy in favor of the insured. *Auto Club Ins Ass'n v DeLaGarza*, 433 Mich 208, 214; 444 NW2d 803 (1989), *Powers v DAIIE*, 427 Mich 602, 624; 398 NW2d 411 (1986). However, we will not create ambiguity where the terms of the contract are clear. *Churchman, supra* at 567, *Patek v Aetna Life Ins Co*, 362 Mich 292; 106 NW2d 828 (1961). Where there is no ambiguity, we will enforce the terms of the contract as written. *Arco, supra* at 402, *Stine v Continental Casualty Co*, 419 Mich 89, 114; 349 NW2d 127 (1984).

Furthermore, this Court will interpret the terms of an insurance contract in accordance with their "commonly used meaning." *Arco, supra* at 403; *Group Ins Co of Michigan v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992), *Fireman's Fund Ins Cos v Ex-Cell-O Corp*, 702 F Supp 1317, 1323, n 7 (ED Mich, 1988). We take into account the reasonable expectations of the parties. *Vanguard Ins Co v Clarke*, 438 Mich 463, 472; 475 NW2d 48 (1991). [460 Mich 111-112.]

NW2d 760 (1994),  we said that the test was whether the consequences of an insured's intentional act

> "either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions. When an insured acts intending to cause property damage or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended. Similarly, . . . when an insured's intentional actions create a direct risk of harm, there can be no liability coverage for *any* resulting damage or injury, despite the lack of an actual intent to damage or injure." [460 Mich 115-116.][9]

Applying those principles to the facts of *Masters*, we concluded that the fire was caused by an intentional act. Moreover, the fire was set with the intention of doing property damage. Thus, the fire could not be characterized as an "accident," and there was no "occurrence" as that term was used in the insurer's policy. 460 Mich 116.

III

We analyze the present case using the same principles that we applied in *Masters*.

---

[9] As further illustration, we presented a hypothetical example found in Chief Justice CAVANAGH's dissent in *Piccard*, n 6 *supra* at 558:

> Suppose the fire had been started by a faulty electric cord on the insured's coffee maker. Examining the insured's act for "intent," there is no doubt that he purposely plugged in the coffeemaker and turned on the switch. In that sense he acted intentionally. The fire remains an accident and the act constitutes an occurrence, however, because at the time of the insured's purposeful act he had no intent to cause harm. The act of plugging in the coffeepot is not a sufficiently direct cause of the harm, and the fire in this example is an accident.

To determine whether the tripping of Mr. Nabozny was an accident, we view the matter from the standpoint of Mr. Burkhardt, the insured. Though the testimony of the insured is not controlling with regard to this aspect of the inquiry, we find in this case that Mr. Burkhardt's testimony is revealing.[10] Here is his account of what happened when he approached Mr. Nabozny a second time, after Mr. Nabozny had initially refused to fight:

> *Q.* Can you just tell us, though, the incident itself basically what happened in the incident, what did you do?
> *A.* I grabbed him and threw him on the ground, and I hit him a couple of times in the chest area, and got up off of him, it was over with.
> *Q.* Where did you grab him, do you recall?
> *A.* Up here somewhere, I think. Shoulder.
> *Q.* You're referring to the front of your body?
> *A.* Right, the arm or something. I don't know.
> *Q.* Did you use your legs in some manner in this?
> *A.* Yes.
> *Q.* How—what did you do with your leg?
> *A.* Put my leg behind the back of his calf.
> *Q.* And did what?
> *A.* Brought him down.
> *Q.* Did you move your leg at all?
> *A.* Just frontwards and backwards, like just the back part of it.
> *Q.* Okay. Did you use some motion with your leg?
> *A.* Yes.
> *Q.* And the purpose of that was to do what?

---

[10] Obviously, it can be in the interest of an insured defendant to provide testimony that will allow an injured plaintiff to recover from the insurer rather than directly from the defendant. The testimony quoted in this opinion comes from Mr. Burkhardt's testimony on direct examination by the attorney for Mr. Nabozny. His testimony on cross-examination by counsel for Pioneer was not significantly different.

*A.* To get him down to the ground so that I could have the advantage.

*Q.* So when you grabbed him and you took—what would it be, your right leg?

*A.* Yeah.

*Q.* What was the point of using your leg on Mr. Nabozny?

*A.* To get him down on the ground.

*Q.* That was your object, is that right?

*A.* Right.

*Q.* And then that worked you got him on the ground, right?

*A.* Yes.

*Q.* And then you ended up in a position where with relation to him?

*A.* On top of him.

With regard to whether Mr. Nabozny's injury stemmed from an "accident" notwithstanding the intentional nature of Mr. Burkhardt's action, we recall that "a determination must be made whether the consequences of the insured's intentional act 'either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions.' " 460 Mich 115, quoting 447 Mich 648-649.

In this case, Mr. Burkhardt apparently did not intend to break Mr. Nabozny's ankle.[11] However, it is plain that in tripping someone to the ground in the

---

[11] *Q.* Now, at that time, Mr. Burkhardt, did you believe in your mind that Mr. Nabozny had broken any bones at that point?

*A.* No.

*Q.* When you grabbed him and pushed him down, did you expect that he was going to break any bones by doing that?

*A.* No, I didn't.

*Q.* Did you have an intent in your mind at all to break any of his bones by doing that?

*A.* No, I didn't.

course of a fight, Mr. Burkhardt reasonably should have expected the consequences of his acts because of the direct risk of harm created.[12] This precludes a finding of liability coverage under the terms of this policy. In other words, the injury did not result from an "accident."

Moreover, Mr. Burkhardt's testimony that he did not intend to "break any bones" does not assist him. In our quote from *Marzonie*, Justice GRIFFIN cited[13] *Piccard*, which explained:

> [W]here a direct risk of harm is intentionally created, and property damage or personal injury results, there is no liability coverage even if the specific result was unintended. It is irrelevant that the character of the harm that actually results is different from the character of the harm intended by the insured. [440 Mich 557 (dissent of CAVANAGH, J., adopted in *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 115; 595 NW2d 832 [1999]).]

It is clear from the facts, as stated by the insured, that injury reasonably should have been expected.

---

*Q.* Okay. Did you use any kind of a martial arts-type maneuver, swift or violent maneuver with your leg that would have, you know, against him?

*A.* No.

\*     \*     \*

*Q.* All right. Did you realize that he had—did you realize after he fell that he broke any bones?

*A.* No, I didn't.

*Q.* Did you know when you left the scene that night that he broke any bones?

*A.* Not at all.

[12] *Masters, supra* at 115-116.

[13] *Marzonie, supra* at 649.

Therefore, it is irrelevant that the broken ankle was not the specific harm intended by the insured.

For these reasons,[14] we reverse the judgments of the circuit court and the Court of Appeals, and we remand this case to the circuit court for entry of judgment in favor of the garnishee defendant. MCR 7.302(F)(1).

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

---

[14] In light of our ruling, it is unnecessary to discuss the policy exclusion for intentional or criminal acts.