NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0343n.06

Nos. 17-1649/1716

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FEDERAL-MOGUL LLC,       )
             )
  Plaintiff - Appellee/Cross - Appellant,  )
             )
v.             )
             )
INSURANCE COMPANY OF PENNSYLVANIA, )
             )
  Defendant - Appellant/Cross - Appellee. )
             )

**FILED**
Jul 08, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: MERRITT, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. The parties in this case dispute the meaning of an insurance policy that limited the insurer's liability for losses from "Flood for High Hazard Zones." The district court held that this limitation applied only to property damage rather than to all loss or damage arising out of a flood. We respectfully disagree and reverse.

Federal-Mogul LLC operates an automobile-parts factory in the Rojana Industrial Park in Thailand. In 2010, Federal-Mogul bought an insurance policy for its factory from the Insurance Company of the State of Pennsylvania. That policy provided two types of coverage: "Property Damage," which covered direct physical loss or damage to insured property; and "Time Element," which covered economic losses directly resulting from property damage. The policy also included various limitations on the Insurance Company's liability. As relevant here, the policy limited the Company's liability for losses from "Flood for High Hazard Zones" to $30 million.

A year later, Federal-Mogul's factory was damaged in a flood, which caused about $39 million in property damage and $25 million in time-element loss. Federal-Mogul filed a claim for those losses with the Insurance Company, but the Company refused to pay more than $30 million because, in its view, the flood had occurred in a High Hazard Zone.

Federal-Mogul thereafter sued the Insurance Company, arguing among other things that the $30-million limitation for "Flood for High Hazard Zones" applied only to property damage and thus that the Company remained liable for the full amount of time-element loss. The district court granted summary judgment to Federal-Mogul. We review that decision de novo. *See Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 956 (6th Cir. 2006).

The parties agree that their insurance policy is governed by Michigan law, under which we "look to the language of the insurance policy and interpret the terms therein in accordance with . . . well-established principles of contract construction." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). Federal-Mogul's policy has seven sections, but only the first three are relevant here. Section A describes the general terms of the policy and sets forth various "Limits of Liability." This section includes both a general limit on liability and more specific sublimits. The general limit provides that the Insurance Company "shall not be liable under this 'policy' for more than its proportion of $200,000,000 for all loss or damage arising out of one 'occurrence' regardless of the number of 'locations' or coverages involved in the 'occurrence', except as more specifically limited below[.]" The policy then "more specifically" limits the insurer's liability for losses from "Flood" through the following sublimits:

$200,000,000     Flood Aggregate Limit of Liability for all locations combined in any one policy year, except:

$70,000,000     Flood for Moderate Hazard Zones (Annual Aggregate);
$30,000,000     Flood for High Hazard Zones (Annual Aggregate);
$5,000,000     Flood as respects Errors and Omissions; Contingent Time Element[;] Course of Construction; Service Interruption Property Damage and Time Element combined; Exhibitions, Expositions Fairs or Trade Shows, and Miscellaneous Unnamed Locations ([S]eparate Annual Aggregate); and
$5,000,000     Flood as respects Automatic Coverage (Annual Aggregate)

Section B describes the policy's coverage for "Property Damage." As relevant here, the section includes specific "Flood" coverage for "direct physical loss or damage caused by or resulting from Flood." Finally, Section C describes the policy's coverage for "Time Element." This section covers various forms of economic loss—*e.g.*, lost profits—that "directly result[] from direct physical loss or damage of the type insured by this 'policy[.]'" The question here is whether the $30-million sublimit for "Flood for High Hazard Zones" applies only to the policy's "Flood" coverage for property damage or rather to all loss or damage arising out of a flood.

To answer that question, we begin with the policy's general limit of liability, which limits the Insurance Company's liability "for all loss or damage arising out of one 'occurrence'" to $200 million "except as more specifically limited below." The policy expressly defines an "occurrence" to include "losses from the peril[] of . . . Flood." Thus, by its plain terms, the general limit applies to "all loss or damage arising out of" a flood. Below the general limit, however, the policy "more specifically" limits the insurer's liability for "Flood for High Hazard Zones" to $30 million. The policy does not define the scope of this sublimit, but it does define the term "Flood." Specifically, the policy defines that term "wherever used" as:

Flood; rising waters; surface waters; waves; tide or tidal water; rain accumulation; runoff from natural or man made objects; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray there from, surface waters or sewer back-up resulting from any of the

foregoing; regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, direct physical damage by fire, explosion or sprinkler leakage resulting from Flood is not considered to be loss by Flood within the terms and conditions of this "policy".

Notably absent from this definition is any reference to the policy's "Flood" coverage. Rather the policy—here and elsewhere—uses the term "Flood" to refer more generally to a type of peril insured by the policy. *See* R. 1-1, Page ID 88 (referring to "losses from the peril[] of . . . Flood"). Thus, when the policy limits the Insurance Company's liability for "Flood," it limits the insurer's liability for losses from a particular type of peril rather than a particular type of coverage. To be sure, the "Flood for High Hazard Zones" sublimit does not expressly say what losses it limits. But in the absence of language restricting the sublimit only to property damage, we read the sublimit—like the general limit—to apply to all loss or damage arising out of a "Flood[,]" "regardless of the number of 'locations' or coverages involved[.]"

The other sublimits for "Flood" reinforce this interpretation. Specifically, the policy includes a $5-million sublimit for "Flood as respects . . . Contingent Time Element . . . and . . . Service Interruption Property Damage and Time Element combined." If (as Federal-Mogul says) the term "Flood" refers only to the policy's "Flood" coverage for property damage, however, then there would be no reason to limit (to $5 million) the Company's liability for "Contingent Time Element" losses caused by "Flood." This sublimit therefore confirms that the various caps on "Flood" are not limited only to claims for property damage.

Federal-Mogul points out that courts have construed flood sublimits in other insurance policies to apply only to property damage. But we do not construe insurance policies "in gross." *Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013) (internal quotation marks omitted). Rather we interpret each policy according to its terms. And here those terms

show that the sublimit applies to all loss or damage arising out of a flood, "regardless of the number of . . . coverages involved[.]"

Finally, Federal-Mogul argues that the "Flood for High Hazard Zones" sublimit is at least ambiguous, and that Michigan courts construe "ambiguous terms . . . in favor of the insured." *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999). But Federal-Mogul has not shown that the sublimit is ambiguous. Michigan law therefore requires us to "enforce the terms of the contract as written." *Id.*

Both parties also challenge the district court's award of prejudgment interest. But that issue is moot in light of our holding that the district court erred in granting summary judgment to Federal-Mogul.

The district court's judgment is reversed, and the case remanded for further proceedings consistent with this opinion.