*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEEMIC INSURANCE COMPANY,

        Plaintiff-Appellee,

v

RANDAL S. RITCHIE,

        Defendant,

and

BEVERLY WEATHERSBY,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2022

No. 358929
Branch Circuit Court
LC No. 2020-110569-NO

Before: SHAPIRO, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

In this action for declaratory relief, defendant Beverly Weathersby appeals as of right the trial court's order awarding summary disposition under MCR 2.116(C)(10) to plaintiff, Meemic Insurance Company (Meemic), and denying its insured, defendant Randal S. Ritchie, personal-liability coverage under his homeowner's insurance policy. We affirm.

## I. FACTUAL BACKGROUND

This case arose out of an unfortunate encounter between two strangers, whose stories of the incident vastly differ. As Weathersby tells it, while making a home visit in rural Coldwater as part of her job as a social worker, she became lost and her GPS erroneously sent her to Ritchie's house. She pulled her car into Ritchie's driveway and approached the home. Then, according to Weathersby, Ritchie came out of his house, approached her, and aggressively confronted her while pointing a gun directly at her at close range. He questioned her regarding why she was on his property and told her to leave. Fearing for her life, Weathersby returned to her car and drove away. For his part, Ritchie initially denied that the encounter happened at all before eventually admitting that it did. He testified that he carried his pistol during the encounter, but denied ever pointing it at Weathersby. He testified in his deposition that he approached Weathersby cautiously, helped

her locate the proper address, and kept his handgun on his side and pointing toward the ground at all times with his finger off of the trigger. He explained that there was no confrontation at all.

Weathersby brought a civil action against Ritchie, asserting that Ritchie committed the intentional tort of assault. She also claimed that Ritchie was negligent. She sought damages for the emotional distress and injury she sustained as a result of Ritchie's conduct. At the time of the incident, Ritchie was insured under a homeowner's policy issued by Meemic. Meemic brought the instant declaratory action and moved under MCR 2.116(C)(10) for a determination in regard to its obligation to indemnify and defend Ritchie under the policy. The trial court denied coverage, ruling that Ritchie's act was not an "occurrence" as defined by the policy and, alternatively, that the policy's intentional-act exclusion precluded coverage. Weathersby now appeals.

## II. LEGAL ANALYSIS

On appeal, we must address the trial court's order awarding summary disposition under MCR 2.116(C)(10) to Meemic. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A summary disposition motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *Id.* at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id.* " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id.* The court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and must view that evidence in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 119-120; 597 NW2d 817 (1999). The interpretation of an insurance contract is a question of law that is reviewed de novo. *Meemic Ins Co v Jones*, ___Mich ___, ___; ___ NW2d ____ (2022) (Docket No. 161865), slip op at 10. "An insurance policy is an agreement between parties that a court interprets much the same as any other contract to best effectuate the intent of the parties and the clear, unambiguous language of the policy." *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 381; 565 NW2d 839 (1997) (quotation marks and citation omitted). "[I]n reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). "[A] court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity." *Id*. at 354. "Interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage." *Harrington*, 455 Mich at 382. Accordingly, we shall begin our analysis by addressing coverage under Ritchie's insurance policy and then consider potentially applicable exclusions.

## A. COVERAGE FOR AN "OCCURRENCE"

The main issue in this appeal is whether Ritchie's alleged acts constituted an "occurrence" under Meemic's policy, which would trigger an obligation to indemnify and defend Ritchie. To analyze this question, we must turn to the language of the policy. The policy provides as follows:

**LOSSES WE COVER UNDER COVERAGE E—PERSONAL LIABILITY**

> If a claim is made or a suit is brought against **you** for damages because of **bodily injury**, **personal injury** or **property damage** caused by an **occurrence** to which this coverage applies, **we** will:
>
> > 1. pay up to **our** limit of liability for the damages for which you are legally liable; and
> >
> > 2. provide a defense at **our** expense by counsel of **our** choice, even if the allegations are groundless, false or fraudulent . . . .

In short, Meemic was obligated to provide coverage and defend against Weathersby's lawsuit only if an "occurrence" took place. See *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 112; 595 NW2d 832 (1999) (interpreting similar policy provision).

The Meemic policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, resulting in **bodily injury**, **personal injury**, or **property damage** during the term of the policy." Thus, the pertinent question is whether Ritchie's act of pointing a gun at Weathersby and aggressively confronting her could constitute an "accident" that would fall within the definition of an "occurrence." The term "accident" is not defined in the policy, so "the commonly used meaning controls." *Masters*, 460 Mich at 114 (quotation marks and citation omitted). In interpreting similar policy provisions, Michigan courts have adopted the common meaning of "accident" as "an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Id*. (quotation marks and citation omitted). See also *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 482; 642 NW2d 406 (2001). Our Supreme Court has further explained that "the definition of accident should be framed from the standpoint of the insured, not the injured party." *Masters*, 460 Mich at 114, n 6. See also *Allstate Ins Co v McCarn (McCarn I)*, 466 Mich 277, 282; 645 NW2d 20 (2002) ("[a]ccidents are evaluated from the standpoint of the insured"). Importantly, "the appropriate focus of the term 'accident' must be on both the injury-causing act or *event* and its relation to the resulting property damage or personal injury." *Masters*, 460 Mich at 115 (quotation marks and citations omitted). The *Masters* Court provided detailed instructions for courts to follow when deciding whether an act constitutes an accident, stating as follows:

> Of course, an insured need not act unintentionally in order for the act to constitute an "accident" and therefore an "occurrence."
>
> However, where an insured does act intentionally, a problem arises in attempting to distinguish between intentional acts that can be classified as accidents and those that cannot. In such cases, a determination must be made whether the consequences of the insured's intentional act either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions. When an insured act intending to cause property damage or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended. Similarly, . . . when an insured's intentional actions create a direct risk of harm,

there can be no liability coverage for *any* resulting damage or injury, despite the lack of an actual intent to damage or injure.

> We find useful the [following] hypothetical example . . . :
>
> Suppose the fire had been started by a faulty electric cord on the insured's coffeemaker. Examining the insured's act for "intent," there is no doubt that he purposely plugged in the coffeemaker and turned on the switch. In that sense he acted intentionally. The fire remains an accident and the act constitutes an occurrence, however, because at the time of the insured's purposeful act he had no intent to cause harm. The act of plugging in the coffeepot is not a sufficiently direct cause of the harm, and the fire in this example is an accident. [*Masters*, 460 Mich at 115-116 (quotation marks and citations omitted).]

In other words, as our Supreme Court stated in *McCarn I*:

> What this essentially boils down to is that, if both the act and the consequences were intended by the insured, the act does not constitute an accident. On the other hand, if the act was intended by the insured, but the consequences were not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured.
>
> As to the perspective from which the analysis should be made, the question is not whether a *reasonable person* would have expected the consequences, but whether the *insured* reasonably should have expected the consequences. Accordingly, an objective foreseeability test should not be used . . . . Rather, the analysis must be that, to avoid coverage, the consequence of the intended act, which created a direct risk of harm, reasonably should have been expected by the insured. [*McCarn I*, 466 Mich at 282-283 (applying a similar definition of "accident").]

Two examples inform our inquiry. In *McCarn I*, the injury-causing act was the discharge of a firearm that led to the death of Kevin LaBelle, which occurred when the insureds' grandson, Robert McCarn, took a shotgun from under his grandfather's bed, believing it was unloaded, pointed it at LaBelle, and pulled the trigger—killing LaBelle. See *McCarn I*, 466 Mich at 279. Our Supreme Court reasoned that, viewing the act from the standpoint of the insured, "there was no intentional creation of a direct risk of harm because of the undisputed evidence that Robert McCarn believed he was pulling the trigger of an unloaded gun." *Id*. at 284. Consequently, the shooting was accidental and was an "occurrence" that triggered coverage under the policy. *Id*. at 279, 285. In contrast, in *Nabozny v Burkhardt*, 461 Mich 471, 479-481; 606 NW2d 639 (2000), our Supreme Court ruled that the insured's act of intentionally tripping the plaintiff during a fight was not accidental because the insured should have reasonably expected that the plaintiff could suffer a broken ankle as a result. As a result, our inquiry is whether an "accident," and therefore an "occurrence," triggering coverage took place when Ritchie pointed the gun at Weathersby and confronted her, or if he intended his act. Then, if we conclude that he performed an intentional act, we must decide whether "the consequences of [his] intentional act either were intended by [him] or reasonably should have been expected because of the direct risk of harm intentionally created by [his] actions." *Masters*, 460 Mich at 115 (quotation marks and citation omitted).

In arriving at this determination, we must "examine the substance of the underlying tort complaint and the basis for the injuries, rather than simply the nomenclature in the complaint . . . ." *Burchell*, 249 Mich App at 481. "The duty to defend and indemnify is not based solely on the terminology used in the pleadings in the underlying action. The court must also focus on the cause of the injury to determine whether coverage exists." *Fitch v State Farm Fire & Cas Co*, 211 Mich App 468, 471; 536 NW2d 273 (1995). Again, "the appropriate focus of the term 'accident' must be on both the injury-causing act or event and its relation to the resulting . . . injury." *Masters*, 460 Mich at 115. Because the motion for summary disposition was brought under MCR 2.116(C)(10), we may review the record evidence. *Maiden,* 461 Mich at 119-120.

Looking to the substance of Weathersby's complaint, the injury-causing act was Ritchie's allegedly unprovoked act of aggressively confronting her by pointing his handgun directly at Weathersby at close range with his hand on the trigger. This act caused Weathersby emotional distress and injury by placing her in mortal fear.[1] If Weathersby's factual assertions are believed, Ritchie's act was not accidental. The record contains no evidence from which it could be concluded that Ritchie accidentally pointed his handgun at Weathersby. Ritchie testified that he did not trip or otherwise make any movements that caused him to accidentally point his gun at Weathersby. In fact, Ritchie admitted in his deposition that if he had pointed his gun at Weathersby (although he denied doing so), it would have been intentional. On the basis of this record, Weathersby's alleged emotional injury manifestly resulted from Ritchie's alleged intentional act of pointing his gun at her.

That being said, Ritchie need not have acted unintentionally "in order for the act to constitute an 'accident' and therefore an 'occurrence' " under the policy. *Masters*, 460 Mich at 115 (quotation marks and citations omitted). It matters "whether the consequences of the insured's intentional act either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions." *Id.* (quotation marks and citation omitted). We analyze this question from the insured's standpoint, *McCarn I*, 466 Mich at 283-285, and direct our focus to both the injury-causing act *and* its relation to the resulting injury. *Masters*, 460 Mich at 115. As discussed, Weathersby alleged in her complaint that Ritchie aggressively confronted her and pointed a handgun at her at close range without any provocation.[2] To be sure, there was no direct testimony that Ritchie intended to cause Weathersby fear or emotional distress. But if Ritchie acted as Weathersby alleged, he reasonably should have expected that Weathersby would be placed in fear and would suffer emotional injury as a result. Unlike in *McCarn I* where a playing child thought a gun was not loaded when he pulled the trigger, Ritchie's alleged act of pointing his gun at Weathersby intentionally created a direct risk of mortal

---

[1] Weathersby sought compensatory and exemplary damages. Meemic's policy, however, contains a specific exclusion precluding coverage for exemplary damages: "**We** do not cover . . . punitive and exemplary damages awarded against **you**."

[2] In his deposition, Ritchie admitted that Weathersby did not threaten him. Weathersby testified in her deposition that she had no weapon during the encounter.

fear and emotional injury.[3] Therefore, Ritchie "reasonably should have expected the consequences of his act because of the risk of harm he created."[4] *Nabozny*, 461 Mich at 481. Hence, Ritchie's alleged injury-causing act, in relation to the emotional distress and injury Weathersby allegedly suffered as a result, cannot reasonably be construed as an "accident." *Masters*, 460 Mich at 115. Therefore, the incident was not an "occurrence" triggering coverage, so Meemic had no duty to indemnify or defend Ritchie.[5] Accordingly, the trial court did not err when it granted summary disposition in Meemic's favor on that basis.

## B. EXCLUSION FROM COVERAGE

Meemic also contends that it is entitled to summary disposition under MCR 2.116(C)(10) on the basis of a policy exclusion. "Once a court decides that liability may exist under an insurance policy it may then determine whether coverage is precluded by an exception." *Allstate Ins Co v McCarn (After Remand) (McCarn II)*, 471 Mich 283, 287; 683 NW2d 656 (2004). "Clear and specific exclusions must be enforced as written so that the insurance company is not held liable for a risk it did not assume." *Home-Owners Ins Co v Smith*, 314 Mich App 68, 73; 885 NW2d 324 (2016). Here, a policy exclusion precludes recovery for bodily or personal injury resulting from:

> an act or omission by a **named insured** which is intended or could reasonably be expected to cause **bodily injury** [or] **personal injury** . . . . This exclusion applies even if the **bodily injury** [or] **personal injury** . . . is different from, or greater than that which is expected or intended. This exclusion does not apply to anyone other than the person who committed the intentional act resulting in loss under the policy.

For that exclusion to apply, an "occurrence" was required to trigger the policy. As discussed, the incident was not an "occurrence" as defined by the policy. But even assuming, *arguendo*, that an "occurrence" took place, a reasonable person in Ritchie's position should have expected that such conduct would cause an unarmed, nonthreatening stranger severe emotional distress. See *McCarn II*, 471 Mich at 290-291 (pertinent question is whether a reasonable person in the insured's position should have expected the injury resulting from intentional act); see also *Burchell*, 249 Mich App at 482-483 ("In order for an injury to be 'expected,' it must be the 'natural, foreseeable, expected, and anticipated result of an intentional act by the insured' and the 'intended or expected' language 'bars coverage for injuries caused by an insured who acted intentionally despite his awareness that

---

[3] Oddly, Weathersby's argument would be stronger if Ritchie had accidentally fired his weapon.

[4] Although the alleged incident might have caused greater harm to Weathersby's mental state than expected, considering that she had previously suffered from posttraumatic stress disorder after her daughter was murdered with a gun, "it is irrelevant whether the harm that resulted . . . was different from or exceeded the harm intended . . ." for purposes of insurance coverage. *Masters*, 460 Mich at 116 (quotation marks and citation omitted).

[5] The policy provides that "[i]f a claim is made or a suit is brought against **you** for damages because of **bodily injury** . . . caused by an **occurrence** to which this coverage applies, **we** will . . . provide a defense at **our** expense . . . even if the allegations are groundless, false or fraudulent."

harm was likely to follow from his conduct.' "").  Consequently, an exclusion in the policy would excuse Meemic from its duty to defend and indemnify Ritchie.

## C.  THE EFFECT OF THE NEGLIGENCE CLAIM

Finally, we address Weathersby's theory that Meemic has a duty to defend Ritchie because she pleaded a negligence claim, which alleged that Ritchie did not intend his actions or the injuries he caused her.  We reject this theory.  "It is well established that an insurer has a duty to defend an insured and that such duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage."  *Burchell*, 249 Mich App at 480-481 (quotation marks and citation omitted).  "Further, an insurer has a duty to defend, despite theories of liability against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy."  *Id*. at 481.  But "if no theories of recovery fall within the policy, an insurer does not have a duty to defend."  *Id*.  "There is no duty to defend or provide coverage where a complaint is merely an attempt to trigger insurance coverage by characterizing allegations of tortious conduct as 'negligent' activity . . . . "  *Id*. at 483 n 17 (quotation marks and citation omitted).  "The duty to defend and indemnify is not based solely on the terminology used in the pleadings in the underlying action.  The court must focus also on the cause of the injury to determine whether coverage exists."  *Fitch*, 211 Mich App at 471; see also *Burchell*, 249 Mich App at 483 n 17 ("The duty to defend is not limited by the precise language of the pleadings.") (quotation marks and citation omitted).

Weathersby cannot avoid the policy provisions regarding the intentional nature of Ritchie's conduct by relying upon her pleadings that characterize his conduct as negligent use, or misuse, of a firearm.  As we have noted, the substance of Weathersby's claims and the basis for her alleged emotional injury, whether pleaded as negligence or as an intentional assault, was not an accidental "occurrence."  Focusing on "the injury-causing *act* or *event* and its relation to the resulting . . . injury[,]" *Masters*, 460 Mich at 115 (quotation marks and citations omitted), Weathersby's claims are plainly based on Ritchie's intentional conduct in pointing his gun directly at her, at close range, with his hand on the trigger, while aggressively confronting her, thereby placing Weathersby in fear for her life, i.e., an assault.[6]  In other words, whether Weathersby describes Ritchie's conduct as an assault or negligent conduct, she is suing Ritchie for damages for emotional injury resulting from Ritchie's intentional acts.  Again, coverage under the Meemic policy extends only to "accidents" and broadly excludes coverage for bodily injury that was expected or intended.  And, as noted, Weathersby's injuries should have been reasonably expected under the circumstances alleged, and therefore are not covered under Meemic's policy because they did not result from an accident or "occurrence."  See *Burchell,* 249 Mich App at 486.  In light of the intentional nature of Ritchie's alleged conduct underlying Weathersby's claims, we agree that Meemic was not obligated to defend and indemnify Ritchie, regardless of whether Weathersby pleaded negligence,

---

[6] "An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact."  *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991).

assault, or both. The intentional act underlying Weathersby's claims and the alleged injury were the same under both theories.

Our conclusion does not change even if we accept Ritchie's version of events as that which is most favorable to Weathersby. Ritchie testified in his deposition that he approached Weathersby cautiously, helped her locate her client's address, and kept his handgun at his side pointing toward the ground at all times with his finger off the trigger. Under this version of the encounter, coverage would still not be available. Weathersby's complaint did not allege that the mere presence of the gun caused her emotional injury. Instead, Weathersby alleged that Ritchie's conduct—pointing the gun directly at her at close range in an aggressive manner—was the injury-causing act that prompted her to fear death or serious injury and suffer the resulting emotional injury. Thus, if the finder of fact believed Ritchie's version, Ritchie (and Meemic) could not be liable for her damages because the lack of proximate cause would defeat her negligence claim. *Benton v Dart Props Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). And if the finder of fact believed Weathersby's account, Ritchie would have committed an intentional act that was not covered under the Meemic policy. Thus, no matter whose account is believed, Weathersby cannot conceivably recover under the policy, so Meemic has no duty to defend or indemnify Ritchie. See *Burchell*, 249 Mich App at 486-487.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael F. Gadola
/s/ Christopher P. Yates