# STATE OF MICHIGAN

# COURT OF APPEALS

M-59 JOY, LLC,

        Plaintiff-Appellant,

v

LAMAR ADVERTISING OF MICHIGAN, INC.,

        Defendant-Appellee.

UNPUBLISHED
October 26, 2017

No. 333266
Macomb Circuit Court
LC No. 2015-003035-CB

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff and real property owner M-59 Joy, LLC, appeals as of right the trial court's order granting summary disposition in favor of defendant and billboard company Lamar Advertising of Michigan, Inc., with respect to plaintiff's action for breach of contract arising out of two leases that were terminated early by defendant. The crux of the dispute concerns the interpretation of a contractual clause and whether defendant was indeed entitled to prematurely terminate the leases under the clause and the surrounding circumstances. We affirm.

## I. BACKGROUND

### A. FACTUAL HISTORY

Plaintiff is the owner of a narrow strip of real property situated adjacent to I-94 in Mt. Clemens. Historically, two outdoor billboards have been located on the property. The parties' lease agreements, referred to as sign location leases, described the leased premises as the "West Side of I-94 .2 Miles South of Joy Blvd. Facing North and South." The leases, one for each of the two billboards on the property, were entered into in April 2008. They provided that plaintiff leased to defendant "as much of the . . . described lease premises as may be necessary for the construction, repair and relocation of an outdoor advertising sign . . ., including necessary structures, advertising devices, utility service, power poles, communications devices and connections, with the right of access to and egress from the sign . . . ." The leases were for 10-year terms with an annual rent of $24,000 per lease or billboard.

The leases had been prepared by defendant, and plaintiff's owner and member Joseph Oram struck three of the clauses contained in each lease prior to execution of the agreements. A clause that remained part of both contracts and which forms the heart of the dispute provided:

LESSEE may terminate this lease upon giving thirty (30) days written notice in the event that the sign becomes entirely or partially obstructed in any way *or in LESSEE'S opinion the location becomes economically or otherwise undesirable. . . . .* [Emphasis added.]

Hereinafter, we shall refer to this provision, and specifically the emphasized language, as the termination clause.

In November 2009, due to a major downturn in the economy and a resulting decline in advertising revenues generated by its billboards, defendant requested a reduction in the rent to $3,706 annually relative to each lease. Plaintiff was unwilling to reduce the annual rent, demanding that defendant honor the lease agreements and make payments in timely fashion. In response, in December 2009, defendant invoked the termination clause and gave plaintiff the required 30 days' notice. In the letter to plaintiff invoking the termination clause, defendant asserted that it had demonstrated to plaintiff that the location, as well as other locations,[1] had become economically undesirable.

On March 22, 2010, defendant entered into a sign location lease with another nearby property owner on land described as being "On the West Side of I-94, Approximately 1/10 Mile South of Joy Blvd., Facing North & South." This was a 20-year lease, commencing with an annual rent of $8,500 that is scheduled to increase by $400 in two-year increments over the life of the lease. In an affidavit executed by Oram, he averred that defendant had removed its two billboards from plaintiff's property by April 15, 2010, that defendant obtained a permit to construct a new billboard on the neighboring lessor's property that would be located less than 500 feet from the former site of the northernmost billboard that had once stood on plaintiff's land, and that the location of defendant's new billboard would be identical to the old location with respect to traffic counts, impressions, and expected ad revenue.

## B. PROCEDURAL HISTORY

Nearly six years after defendant terminated the leases, plaintiff filed a two-count complaint against defendant, alleging breach of contract for not abiding by the 10-year leases and tortious interference with business expectancies. Plaintiff later voluntarily dismissed the tortious interference claim. In November 2015, defendant filed a motion for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's breach of contract claim failed as a matter of law because defendant had properly invoked the termination clause. Defendant stated that "[t]he location on [plaintiff's property] became economically undesirable because the advertising revenue [defendant] generated from [each] billboard could not support the $24,000 annual rent, which [plaintiff] refused to reduce." Defendant attached to its motion a 2009 article from Advertising Age that supplied statistics showing the dramatic drop in advertising spending caused by the faltering economy. The article indicated that "the bottom line is brutally clear: 2009 saw the sharpest percentage decline in ad spending since the Great Depression."

---

[1] Plaintiff owned other parcels in various areas that were also leased to defendant, but they are not at issue in this case.

In response, plaintiff argued that the termination clause did not allow for defendant to extricate itself from the leases simply because it wished to reduce its rental burden. Plaintiff contended that the termination clause required any economically undesirable change to be tied directly to the property's "location," such as a reduction in traffic counts, views, and impressions, which had not changed, and which were exactly the same with respect to the property covered by defendant's new lease. Stated otherwise, the termination clause could not be invoked if the "rent" became economically undesirable, but only if the "location" became economically undesirable, which did not occur. In his affidavit attached to plaintiff's response brief, Oram averred:

> 9. Prior to signing the Lease, I interpreted [the termination clause] to mean that the Defendant could only terminate the Lease if the location became undesirable, not if the lease terms or rent became undesirable.

> 10. The Defendant never indicated to me prior to the execution of the Leases that it interpreted the word "location" to mean that it could terminate the Lease[s] if it determined that the rent was too high.

> 11. I would not have entered into the Leases if the Defendant was permitted to terminate the Leases at any time it felt the rent was undesirable.

On January 4, 2016, the trial court entertained oral argument on defendant's motion for summary disposition and took the matter under advisement. On May 18, 2016, the trial court issued a written opinion and order granting defendant's motion for summary disposition. In pertinent part, the court, after noting that plaintiff did not dispute defendant's assertion that the country, including the area of plaintiff's property, suffered an economic downturn in 2009, ruled as follows:

> In this case, the Leases unambiguously provide that Defendant may terminate the Leases if, in its opinion, the locations in question become economically undesirable. In its response, Plaintiff concedes that Defendant was able to, and did, enter into leases for billboard(s) in virtually the same location with a different company for a lower rental rate than the rate provided for under the Leases. Accordingly, the Court is convinced that such circumstances rendered the locations rented under the Leases economically undesirable in light of the fact that Defendant could obtain billboard space in the same general area for less money. Consequently, the Court is satisfied that Defendant was authorized to terminate the Leases in question based on Plaintiff's refusal to lower the rental rate. Further, because both of Plaintiff's claims are based upon their contention that Defendant was not permitted to terminate the Leases for the stated reason, a

position that has been rejected by this Court, Defendant is entitled to summary disposition of both of Plaintiff's claims.[2]

Plaintiff now appeals as of right.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). We likewise review de novo the question whether contractual terms are ambiguous. *Rossow v Brentwood Farms Dev, Inc,* 251 Mich App 652, 658; 651 NW2d 458 (2002).

### B. PRINCIPLES REGARDING SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

With respect to the well-established principles that govern our analysis of a motion for summary disposition brought under MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

---

[2] The court's recitation of the case's history revealed that the court was unaware of plaintiff's voluntary dismissal of the tortious interference claim, which explains why the court ruled that defendant was entitled to summary dismissal of "both" of plaintiff's claims.

## C. THE LAW OF CONTRACTS

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). A contract requires mutual assent or a meeting of the minds on all the essential terms of an agreement. *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). In light of this, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965) (citations omitted); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999). However, a court will not create ambiguity where the terms of the contract are clear. *Frankenmuth Mut*, 460 Mich at 111.

## D. DISCUSSION AND HOLDING

Again, the termination clause allowed for termination of the leases on 30 days' notice "in the event that . . . in LESSEE'S opinion the location becomes economically or otherwise undesirable." This is extremely broad language. The clause contemplates the occurrence of some type of future event that renders the location of the billboards or plaintiff's property economically undesirable. Plaintiff does not dispute defendant's claim that the economy spiraled downward in 2009, leading to a decline in advertisement spending and negatively impacting advertisers' revenue streams. Plaintiff essentially wishes us to view the economic desirability of the location through a narrow lens that only takes into consideration physical characteristics and features of the location, including the surrounding environment, e.g., traffic flow and counts relative to vehicles that pass by the billboards. But, in the context of the business of advertising, the economic desirability of a location must also necessarily take into account the advertising revenues that can be generated at a particular location in conjunction with the costs incurred by an advertiser in being able to utilize that location, e.g., any rent associated with a location. A location's economic viability for purposes of operating a business would be judged, at least in part, on any rental costs. And the simple fact is that the economic collapse in 2009 – a future event – made plaintiff's property and the location of the billboards economically undesirable when taking into consideration the revenue that could be generated by the billboards and the amount of rent that needed to be paid under the existing leases. The fact that locations used for advertising all across the country were similarly suffering as a result of the financial crisis is not pertinent, nor does it undermine defendant's position.

Moreover, although not touched upon by the trial court, the question whether the location actually became economically undesirable is not truly the decisive issue under the plain language of the termination clause. Rather, under the clear and unambiguous language of the termination clause, the pertinent question is whether the location became economically undesirable *in defendant's opinion.* Plaintiff does not dispute that defendant genuinely held the opinion that the location became economically undesirable, which effectively harpoons plaintiff's action for breach of contract. An unsound opinion or one lacking in factual support is nonetheless an opinion. We find no ambiguity in the termination clause.

-5-

In sum, under the circumstances that evolved, defendant was permitted to terminate the leases under the plain language of the termination clause. Accordingly, plaintiff, as a matter of law, cannot succeed on a breach of contract action, and the trial court thus did not err in granting summary disposition in favor of defendant.

Affirmed. Having fully prevailed on appeal, defendant is awarded taxable costs pursuant to MCR 7.219.

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause