*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

BRONSON HEALTH CARE GROUP, INC.

        Plaintiff-Appellee,

v

USAA CASUALTY INSURANCE COMPANY and
USAA GENERAL INDEMNITY COMPANY,

        Defendants-Appellants.

FOR PUBLICATION
December 10, 2020
9:05 a.m.

No. 351050
Kalamazoo Circuit Court
LC No. 2019-000397-AV

Before: RONAYNE KRAUSE, P.J., and MARKEY and BORRELLO, JJ.

MARKEY, J.

Defendants, USAA Casualty Insurance Company and USAA General Indemnity Company (collectively USAA), appeal by leave granted an order of the circuit court that denied USAA's application for leave to appeal an order of the district court in this suit involving the no-fault act, MCL 500.3101 *et seq*. The district court had entered an order denying USAA's motion for summary disposition under MCR 2.116(C)(7) and (10). We reverse the circuit court's ruling and remand to the circuit court for entry of an order granting USAA's application for leave, reversing the district court's order, and remanding the action to the district court for entry of judgment in favor of USAA and against plaintiff, Bronson Health Care Group, Inc. (Bronson).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This appeal concerns the interpretation and application of MCL 500.3143, which provides that "[a]n agreement for assignment of a right to benefits payable in the future is void." On May 8, 2018, Brian Moore was injured in a motor vehicle accident. He had a no-fault insurance policy with USAA. Moore went to the emergency department at Bronson Lakeview Hospital for treatment. At 7:36 a.m., after having arrived at the hospital, Moore signed a consent-to-treat form, which provided, in pertinent part, as follows:

I agree to all procedures, hospital care, and treatment my doctor has ordered.

My doctor may have help from other healthcare professionals. My doctor may change my care to benefit my life or health.

\* \* \*

**Assignment of Rights**   I assign to Bronson all rights to bill for services I receive. I give Bronson all rights to pursue payment of my bills. This means that Bronson can, for example:

• Send my bills to insurance companies and health plans. Communicate with them for the purpose of getting Payment

• Appeal the denial of payment or an adverse benefit determination

• File a lawsuit to get payment of a bill

• Be involved in any lawsuit or proceeding which involves my bill

• This includes pursuing all costs, interests, penalties and attorney fees allowed by law. I give up all rights to settle, release, or retain monies for my Bronson bill. I give up the right to take any action which would compromise payment or reimbursement of my Bronson bill.

\* \* \*

**My Responsibility for Payment**

• I am responsible to pay all Bronson charges not covered by insurance.

• There may be a difference between Bronson's charges and the amounts paid by insurance. I am responsible for paying the difference.

Although the title of the form alluded to consent for purposes of obtaining treatment, for ease of reference and given the issue on appeal, we will refer to this document as an "assignment." The assignment did not contain any information regarding specific medical treatment that would be provided to Moore, the dates of any services, or the estimated costs of any treatment.

According to hospital records, Moore's triage vitals were taken at 7:40 a.m. A physician then examined Moore and ordered a head CT[1] scan and a cervical spine CT scan. Moore was discharged soon after the scans were taken. Moore returned to the emergency department at Bronson Lakeview Hospital on May 23, 2018. At 11:52 a.m., Moore signed a consent-to-treat form, which was identical to the one he signed on May 5, 2018, and, like the earlier form, will be referred to as an "assignment." Hospital records indicated that Moore's triage vitals were taken at 11:57 a.m. and that he was eventually seen by a physician's assistant and discharged.

---

[1] CT stands for computerized tomography.

On May 2, 2019, Bronson sued USAA to collect payment for its charges related to Moore's medical care during the two emergency department visits, which totaled $5,411.22. Pursuant to the assignments, Bronson alleged that Moore had assigned to Bronson the right to pursue payment of his no-fault personal protection insurance (PIP) benefits from USAA. In Count I of the complaint, Bronson alleged that USAA, by failing to pay the PIP benefits, breached the no-fault insurance policy. In Count II, Bronson sought a declaratory judgment proclaiming that USAA was responsible to pay the charges for Moore's medical treatment and care.

USAA moved for summary disposition under MCR 2.116(C)(7) and (10). USAA argued that the assignments were void under MCL 500.3143 because they constituted assignments of a right to benefits payable in the future and not a right to payment of past or presently due benefits. USAA contended that because Moore signed the assignments before he received any medical treatment and before any charges were incurred, the assignments concerned benefits payable in the future. USAA maintained that this Court in unpublished opinions had held that assignments executed under similar circumstances were void.

In its response, Bronson argued that because Moore executed the assignments contemporaneously with his treatment, the assignments were valid and did not offend MCL 500.3143. Bronson's theory was that PIP benefits are payable as loss accrues, that loss accrues when an expense is incurred, that an expense is incurred when a person signs a contract for products or services, and that Moore incurred the medical expenses, promising payment of the charges, when he signed the assignments. Bronson additionally argued that even if the assignments "only assigned future benefits due to the time of the signature and treatment," the May 23, 2018 assignment "still operate[d] to assign past due benefits to Bronson, which would include the charges for May 8, 2018."

At the hearing on the motion for summary disposition in the district court, USAA contended that Bronson's argument was the same argument that the hospital had made in another case and that although initially accepted by the circuit court, it was rejected by this Court in an unpublished opinion. See *Bronson Health Care Group, Inc v Farm Bureau Mut Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2019 (Docket No. 341200). Bronson responded that this Court's holding was not binding precedent and that it was going to appeal that case to the Michigan Supreme Court. We note that our Supreme Court did eventually deny Bronson's application for leave to appeal in that other litigation. *Bronson Health Care Group, Inc v Farm Bureau Mut Ins Co of Mich*, 505 Mich 942 (2019).

The district court denied USAA's motion for summary disposition, explaining that the other Bronson lawsuit was still pending in the Michigan Supreme Court, that this Court's opinion was not binding precedent, and that it believed that is should continue to follow the circuit court's ruling in the other Bronson case despite this Court's reversal of the ruling. The district court also concluded that the May 23rd assignment effectively covered the prior treatment provided to Moore on May 8th. The district court further ruled that medical services were received by Moore just minutes after he signed the assignments; therefore, the execution of the assignments and the delivery of treatment were essentially contemporaneous events and thus the assignments did not concern future benefits for purposes of MCL 500.3143.

USAA filed an application for leave to appeal in the circuit court, and the court denied the application in an order because it was "not persuaded that the issues presented should be reviewed by" the court. USAA then moved for leave to appeal in this Court, which was granted. *Bronson Health Care Group, Inc v USAA Cas Ins Co*, unpublished order of the Court of Appeals, entered February 28, 2020 (Docket No. 351050). The appeal was limited to the issues raised in the application. *Id.*

## II. ANALYSIS

### A. STANDARD OF REVIEW AND THE CONSTRUCTION OF CONTRACTS AND STATUTES

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We also review de novo questions concerning the proper interpretation and application of contractual and statutory language. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005); *Gray v Chrostowski*, 298 Mich App 769, 774-775; 828 NW2d 435 (2012).

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id.* at 461. If the language of a contract is ambiguous, testimony may be taken to explain the ambiguity. *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999).

In *Highfield Beach at Lake Mich v Sanderson*, __ Mich App __, __; __ NW2d __ (2020); slip op at 8, this Court recited the rules that govern statutory construction:

> "The primary task in construing a statute is to discern and give effect to the Legislature's intent, and in doing so, we start with an examination of the language of the statute, which constitutes the most reliable evidence of legislative intent. When the language of a statutory provision is unambiguous, we must conclude that the Legislature intended the meaning that was clearly expressed, requiring enforcement of the statute as written, without any additional judicial construction. Only when an ambiguity in a statute exists may a court go beyond the statute's words to ascertain legislative intent. We must give effect to every word, phrase, and clause in a statute, avoiding a construction that would render any part of the statute nugatory or surplusage." [Citation omitted.]

## B. ARGUMENTS ON APPEAL

USAA argues that the assignments were void under MCL 500.3143 because the statute provides that an agreement to assign a right to benefits to be paid in the future, like the assignments here, is void. According to USAA, the assignments in this case did not assign a right to any past or presently due benefits but only to future benefits. Furthermore, the assignments did not indicate that any services had already been provided, did not identify the nature of any services that would be provided, and did not specify estimated charges for any services. Instead, the assignments reflected that Moore would receive services in the future. USAA argues that in three unpublished opinions this Court held that similar and even identical assignments were void under MCL 500.3143. USAA also maintains that with respect to the May 23, 2018 assignment, there was no language that could be construed as assigning a right to benefits for services that were provided back on May 8, 2018, or that were otherwise past due.

Bronson argues that it was assigned a right to benefits that were presently payable. Bronson contends that PIP benefits are payable as loss accrues, which happens when an expense is incurred. And an expense is incurred, according to Bronson, when one becomes liable for payment, such as by signing a contract for products or services. Bronson asserts that when Moore went to the hospital for medical care, he agreed to be responsible for the payment of all charges not covered by insurance and that this created contractual liability to pay for the care he contemporaneously received. Bronson maintains that the fact that its performance was not yet complete when Moore executed an assignment did not render Moore's promise unenforceable, as performance is not an element of contract formation.

## C. DISCUSSION AND RESOLUTION

Under the no-fault act, a medical provider "has no statutory cause of action of its own to directly sue a no-fault insurer." *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 217-218; 895 NW2d 490 (2017). But the Supreme Court also noted:

> Our conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider. See MCL 500.3143; *Professional Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 172; 577 NW2d 909 (1998) (noting that only the assignment of future benefits is prohibited by MCL 500.3143). [*Covenant Med*, 500 Mich at 217 n 40.]

We conclude that Bronson's position is wholly inconsistent with the plain and unambiguous language of MCL 500.3143, which, again, provides that "[a]n agreement for assignment of a right to benefits payable in the future is void." Simply put, when Moore entered into the assignments, the assignments concerned a right to PIP benefits payable in the future. MCL 500.3143 requires a focus on the point in time at which benefits would be payable in comparison to the point in time at which the assignment was executed, precluding an assignment of benefits payable in the future, and the statute does not place any temporal restrictions on defining the "future." For example, benefits first payable five days or five minutes into the future, i.e., five

-5-

days or five minutes after an assignment has been executed, cannot be assigned under MCL 500.3143. At the exact moment that Moore signed the assignments, he had no right to any benefits because benefits were not payable unless and until, minimally, the treatment was received or services were performed—any conclusion to the contrary finds no support in the statute. A no-fault insurer cannot be obligated to pay benefits until after medical services are actually provided.[2] Moreover, a healthcare provider would not be entitled to payment without yet having treated a patient. In no form or fashion did Moore assign a right to past or presently due benefits.[3] Absent the performance of services, there is, of course, no financial liability regardless of whether a patient may have signed an agreement to pay. Had Moore chosen to walk out of the emergency department without receiving any medical treatment after executing the assignments, Bronson would have had no basis to demand payment from Moore, and certainly not from USAA, even if the assignment identified the specific medical services that were planned.

PIP "benefits are payable as loss accrues." MCL 500.3142(1). And MCL 500.3110(4) provides that PIP "benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred." We conclude that an expense is incurred or a patient becomes liable when an agreement to pay is executed *and* treatment is received. See *Clark v Al-Amin*, 309 Mich App 387, 397; 872 NW2d 730 (2015) ("An insured becomes liable for an expense when he accepts the medical treatment for which he (or his insurer) is being charged."); *Community Resource Consultants, Inc v Progressive Mich Ins Co*, 480 Mich 1097, 1098; 745 NW2d 123 (2008) ("Generally, one becomes liable for the payment of services once those services have been rendered.").

In *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003), our Supreme Court indicated that the term "incur" means "[t]o become liable or subject to, [especially] because of one's own actions." (Quotation marks and citation omitted; alterations in original.) The *Proudfoot* Court further noted that "[a]n insured could be liable for costs by various means, including . . . signing a contract for products or services." *Id.* at 484 n 4. Citing *Proudfoot*, Bronson argues that an expense is incurred when a contract for medical services is executed; therefore, loss accrues when the contract is signed, which necessarily means that benefits are payable when the contract is executed.

In examining the meaning of "incurred," the Supreme Court in *Proudfoot* determined that expenses for the future modification of the plaintiff insured's home to accommodate the use of a

---

[2] PIP "benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2).

[3] We reject any assertion that the May 23, 2018 assignment effectively assigned to Bronson a right to benefits for treatment provided to Moore on May 8, 2018. Nothing in the assignment of May 23, 2018, indicated that Moore had received treatment from Bronson in the past. The assignment did not reference any particular services or the charges for past medical treatment. Instead, the May 23, 2018 assignment was an open-ended agreement for unspecified services in unknown amounts relative to future treatment.

wheelchair were not yet incurred, and therefore the insurance company was not required to pay for the modification until the expense was actually incurred. *Id.* at 484. The Court reasoned that "[a]t the time of the judgment, plaintiff had not yet taken action to become liable for the costs of the proposed home modifications." *Id.* The *Proudfoot* Court explained that "[s]hould the insured present a contract for products or services rather than a paid bill, the insurance company may, in order to protect itself, make its check payable to the insured and the contractor." *Id.* at 484 n 4.

At first glance, *Proudfoot* appears to support Bronson's position; however, on closer inspection it becomes clear that *Proudfoot* is not controlling and is distinguishable because of the nature of the contract in this case as compared to the hypothetical contract for home modifications discussed in *Proudfoot*. As noted earlier, there can be no reasonable dispute that had Moore, on either date, left the emergency department after executing the assignment, which document included a promise to pay for medical services, but before treatment was actually provided, Moore would have no liability and thus no expense would be incurred. Accordingly, it cannot be said that Moore incurred an expense by simply signing the assignments. On the other hand, the *Proudfoot* Court contemplated, essentially, a construction contract that would give rise to liability, resulting in the insured's incurring an expense. In that scenario, the insured could not simply walk away from the contract: he could incur contractual liability for breach of a construction contract and be forced to pay damages. The agreement to pay for medical services did not obligate Moore to receive services; rather, Moore only became obligated to pay—and Bronson only became entitled to payment—if Moore actually proceeded to receive medical treatment. Therefore, Moore did not incur an expense and a loss did not accrue until medical services were actually provided. And thus PIP benefits were not payable at the time Moore had merely executed the assignments.

This Court has held that an assignment executed before any medical services are tendered or received constitutes an assignment of a right to benefits payable in the future, rendering the assignment void under MCL 500.3143. In *Bronson*, unpub at 9,[4] the Court ruled:

> The pretreatment assignments upon which Bronson relies, however, were executed before any treatment was provided. [The other four individuals] only signed the registration release forms which plainly did not assign rights to pursue benefits for past or presently due services Bronson already provided. Instead, these insureds assigned their rights to PIP benefits for unknown services to be provided in [the] future. The registration release forms did not render the insureds liable within the meaning of the no-fault act at the time of their execution because the insureds did not become legally responsible to pay for allowable expenses at that time. Because all of the rights to benefits contemplated by the assignments involved rights to benefits payable in the future, these assignments executed before treatment were void under MCL 500.3143. Consequently, the trial court erred by denying Farm Bureau's motion for summary disposition regarding Bronson's claims based upon the void pretreatment assignments executed by the insureds.

---

[4] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

Again, our Supreme Court denied leave in the case. *Bronson*, 505 Mich 942.

In *VHS of Mich v Everest Nat'l Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2019 (Docket No. 341190), p 8, this Court similarly held:

> In this case, the language of the Consent to Treat forms suggests that Ellis was assigning a future right, which would be void. He had not yet received any medical services at the time he signed each form, so assigning any right for the anticipated medical services would, of necessity, be the assignment of a future right. . . . Ellis' assignments in the Consent to Treat forms were invalid as an attempt to assign future rights. As an assignment of future rights, Ellis' assignments on March 15, 2016 and April 13, 2016 are void under MCL 500.3143. [Citation omitted.]

In *Oaklawn Hosp v Auto-Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2019 (Docket No. 343189), pp 9-10, this Court likewise ruled:

> When Dothsuk signed the consent for treatment forms, he had not yet incurred allowable expenses for his medical treatment, at that point he was merely requesting and providing consent to in fact receive medical treatment as a general matter. Notably, the consent for treatment form provides that Dothsuck was "request[ing] and consent[ing] to health care provided by [plaintiff], its physicians, and health care providers." The consent to treatment form also specified that health care could include "examinations, diagnostic procedures and treatment considered appropriate by my attending physician(s) or other health care providers at Oaklawn." The consent for treatment form also specified that Dothsuk reserved the right to refuse any medical treatment, and that "unless an emergency or extraordinary circumstances" arose, "no substantial procedures will be performed upon me" unless Dothsuk had discussed the proposed treatment, to his personal satisfaction, with his physician or other appropriate health care providers. Accordingly, when he signed the consent to treatment forms, while Dothsuk requested that plaintiff provide medical treatment and he consented to health care being provided by plaintiff, PIP benefits had not accrued because allowable expenses had not yet been incurred. MCL 500.3110(4). Under such circumstances, the trial court correctly granted summary disposition in favor of defendants, because even if the consent for treatment forms were construed to be valid assignments, they contravened the prohibition against the assignment of future benefits set forth in MCL 500.3143. [Alterations in original.]

We agree with all three unpublished opinions, as they honor the plain and unambiguous language of MCL 500.3143. Because Moore appeared in the emergency department and signed the assignments before he received any medical treatment related to the assignments, he indeed assigned rights to benefits payable in the future, rendering the assignments void under MCL 500.3143.

In sum, the assignments were void under MCL 500.3143 and therefore the district court erred by denying USAA's motion for summary disposition and the circuit court erred by denying USAA's application for leave to appeal. Accordingly, we reverse the circuit court's ruling and

remand to the circuit court for entry of an order granting USAA's application for leave, reversing the district court's order, and remanding the action to the district court for entry of judgment in favor of USAA and against Bronson.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, USAA may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Stephen L. Borrello